DUNCAN TOWNSITE COMPANY *v.* LANE, SECRETARY OF THE INTERIOR.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 51.   Argued November 15, 1917.—Decided December 10, 1917.

An allotment certificate issued under the Choctaw-Chickasaw agreement of July 1, 1902, c. 1362, 32 Stat. 641, passes the equitable title only; the legal title remains in the United States until conveyed by patent, duly recorded, as provided by.§ 5 of the Act of April 26, 1906, c. 1876, 34 Stat. 137, and the allotment in the meantime is subject to be set aside, by the Secretary of the Interior, for fraudulent procurement.

The doctrine of *bona fide* purchase will not aid the holder of an equity to overcome the holder of both the legal title and an equity.

Mandamus is a discretionary remedy, largely controlled by equitable principles; it will not be granted to promote a wrong—to direct an act which will work public or private mischief, or which, while within

the letter, disregards the spirit of the law. So *held* where the relator, purchaser in good faith and without notice of a fraudulent Indian allotment, sought to get in the legal title as against the United States by compelling the Secretary of the Interior to issue and record a patent.

44 App. D. C. 63, affirmed.

THE case is stated in the opinion.

*Mr. Charles H. Merillat*, with whom *Mr. Charles T. Kappler* was on the brief, for plaintiff in error.

*Mr. Assistant Attorney General Kearful* for defendant in error.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

This is a petition for a writ of mandamus brought in the Supreme Court of the District of Columbia to compel the Secretary of the Interior to restore the name of Nicholas Alberson, deceased, to the rolls under the Choctaw-Chickasaw Agreement of July 1, 1902 (32 Stat. 641), and to execute and record a patent for land described in an allotment certificate issued in his name by the Dawes Commission.

Under that act only the names of persons alive September 25, 1902, were entitled to entry on the rolls. Alberson had died before that date. The entry of his name and the issue of the certificate were procured by fraud and perjury. These facts, now conceded, were established by the Commission to the Five Civilized Tribes; and the Secretary of the Interior upon recommendation of the Commission removed Alberson's name from the rolls, held the certificates for cancellation and allotted the land to others. Notice of the hearing before the Commission was given to Alberson's administrator and attorney of record, but not

to the relator, who had, under the Oklahoma law, recorded
the deed assigning the certificates and was in actual posses-
sion of the premises. The certificates had issued on or
before April 7, 1906. The notation removing Alberson's
name from the rolls was made January 11, 1908. The rela-
tor purchased the certificates before January 11, 1908,
for value in good faith without knowledge of the fraud or
notice of the proceedings for cancellation hereinbefore re-
ferred to. The Supreme Court entered judgment for the
relator, commanding issue and record of the patent, but
making no order in respect to restoring Alberson's name.
to the rolls. The relator acquiesced in the judgment; but
on writ of error sued out by respondent the judgment was
reversed by the Court of Appeals (44 App. D. C. 63); and
the relator brings the case here on writ of error.

The nature of the Choctaw-Chickasaw Agreement [1]
and the rights incident to enrollment and allotment have
been frequently considered by this court. Enrollment
confers rights which cannot be taken away without notice
and opportunity to be heard. *Garfield* v. *Goldsby*, 211
U. S. 249. Certificates of allotment, like receiver's re-
ceipts under the general land laws, entitle the holder to
exclusive possession of the premises; Act of July 1, 1902,
§ 23, 32 Stat. 641–644; *United States* v. *Detroit Lumber Co.*,
200 U. S. 321, 337–8. But enrollment and certificates may
be cancelled by the Secretary of the Interior for fraud or
mistake, *Lowe* v. *Fisher*, 223 U. S. 95; because although
the equitable title had passed, *Michigan Land and Lumber
Co.* v. *Rust*, 168 U. S. 589, 593, the land remains subject
to the supervisory power of the Land Department,
*Knight* v. *Lane*, 228 U. S. 6, until issue of the patent,
*United States* v. *Wildcat*, 244 U. S. 111, unless under the
statute the power expires earlier by lapse of time. *Bal-*

---

[1] See, e. g., *Stephens* v. *Cherokee Nation*, 174 U. S. 445; *Woodward* v.
*de Graffenried*, 238 U. S. 284.

*linger* v. *Frost*, 216 U. S. 240. Under § 5 of the Act of April 26, 1906, c. 1876, 34 Stat. 137, the legal title can be conveyed only by a patent duly recorded. *Brown* v. *Hitchcock*, 173 U. S. 473, 478. The provision in § 23 of the Act of July 1, 1902, that "allotment certificates issued by the Commission to the Five Civilized tribes shall be conclusive evidence of the right of any allottee to the tract of land described therein" has relation to rights between the holder and third parties. The title conferred by the allotment is an equitable one, so that supervisory power remained in the Secretary of the Interior.

We are not required to decide whether (as suggested in *Lowe* v. *Fisher*, 223 U. S. 95, 107) the power to remove Alberson's name from the rolls had, because of § 2 of the Act of April 26, 1906, expired before the Secretary acted. For the Supreme Court of the District did not order the name restored, and its judgment was acquiesced in by the relator. The claim which the relator makes in this court rests wholly upon the fact that the relator was a *bona fide* purchaser for value. But the doctrine of *bona fide* purchaser for value applies only to purchasers of the legal estate. *Hawley* v. *Diller*, 178 U. S. 476, 484. It "is in no respect a rule of property, but a rule of inaction." Pomeroy, Equity Jurisprudence, § 743. It is a shield by which the purchaser of a legal title may protect himself against the holder of an equity, not a sword by which the owner of an equity may overcome the holder of both the legal title and an equity. *Boone* v. *Chiles*, 10 Pet. 177, 210.

Mandamus is an extraordinary remedial process which is awarded, not as a matter of right, but in the exercise of a sound judicial discretion. It issues to remedy a wrong, not to promote one; to compel the performance of a duty which ought to be performed, not to direct an act which will work a public or private mischief or will be within the

strict letter of the law but in disregard of its spirit. Although classed as a legal remedy, its issuance is largely controlled by equitable principles.[1] The relator having itself only an equity seeks the aid of the court to clothe it with the legal title as against the United States, which now holds both the legal title and the equity to have set aside an allotment certificate secured by fraud. A writ of mandamus will not be granted for such a purpose. See *Turner* v. *Fisher*, 222 U. S. 204. The judgment of the Court of Appeals is

*Affirmed.*

---

[1] *People ex rel. Wood* v. *Assessors,* 137 N. Y. 201; *People ex rel. Durant Land Co.* v. *Jeroloman,* 139 N. Y. 14; *Commonwealth ex rel. Van Dyke* v. *Henry,* 49 Pa. St. 530; *Indiana Road Machine Co.* v. *Keeney,* 147 Mich. 184; *United States ex rel. McManus* v. *Fisher,* 39 App. D. C. 176, 181.