## SNOWER v. HOPE DRAINAGE DIST.

### UNITED STATES ex rel. SNOWER v. GRONER et al.

#### No. 2046.

District Court, W. D. Missouri, St. Joseph Division.

March 25, 1933.

932

Paul R. Stinson and Paul E. Basye (of Ryland, Stinson, Mag & Thomson), both of Kansas City, Mo., for plaintiff and relator.

Dean H. Leopard, of Gallatin, Mo., and John F. Rhodes (of Bowersock, Fizzell & Rhodes), of Kansas City, Mo., for defendant and respondents.

OTIS, District Judge.

Under and pursuant to Missouri law, a corporation, the Hope drainage district, was duly formed. Its general purpose was to bring about the protection from floods of farming lands in a certain territory in Daviess county. It was authorized to and did issue bonds, maturing at varying dates, which were sold on the market. William Snower, plaintiff and relator, holds and for some time has held some of these bonds. His bonds total $4,000 in amount. They matured February 1, 1931. They were not paid when due. Whereupon, in this court, Snower instituted suit on his bonds. He had judgment. How to enforce that judgment was then his problem.

The drainage district has on deposit in the Bank of Pattonsburg the sum of $4,505.-75 collected by taxation from landowners in the district for the purpose of paying the bonds of which Snower's are a part. The total amount of bonds maturing at the same time with his is $16,000; the amount maturing a year later is $17,000. All are unpaid. Plaintiff and relator seeks to enforce his judgment out of the fund collected and now possessed by the district.

Two methods of enforcing his judgment are attempted by Snower: (1) By execution and writ of garnishment against the Pattonsburg Bank; (2) by an ancillary proceeding in mandamus against the officers and members of the board of supervisors of the district to require them to pay the judgment out of the fund now on hand.

A motion to quash the execution and writ of garnishment has been filed and is pending. Plaintiff has moved also for an order to require the Pattonsburg Bank as garnishee to pay into court money in its hands belonging to the district. A return has been filed to the alternative writ of mandamus heretofore issued. A bondholders' committee, representing bondholders other than Snower, has intervened in the mandamus proceeding. Relator has moved to strike from the files this intervening petition and for judgment on the pleadings in the mandamus proceeding and for a peremptory writ. All these matters are here for disposition.

#### Mandamus the Remedy, Not Execution and Garnishment.

1. The writ of garnishment which has heretofore been issued cannot be enforced against the deposit in the Pattonsburg Bank. The Hope drainage district is a municipal corporation. State ex rel. v. Drainage Dis-

trict (Supreme Court of Missouri) 49 S.W. (2d) 121, 125. It is elementary in the law that the property of a public corporation held for public uses and governmental purposes is not subject to levy and sale under execution against the corporation. 23 Corpus Juris, 355. Plaintiff makes no question of this general rule, but suggests that the money which has been collected by the drainage district for the payment of bonds issued against the district, and which is now held for the district, is not property held for public uses but is private property of the district and, therefore, is subject to seizure under execution. The suggestion is untenable. Certainly what has been collected by a municipal corporation to pay the principal and interest of bonds issued by it is held for a public use. If the fund which has been collected by the drainage district is private as distinguished from public property, then it is subject to execution in favor of any judgment creditor whatsoever; for if property is private it is not private as to some and public as to others. If one judgment creditor can seize it, so can another. But it would hardly be contended that any creditor of the drainage district having a judgment against it as, for example, some engineer it may have employed and failed to pay, could seize a fund which had been collected by taxation for the specific purpose of paying bonds or the interest thereon. So far then as the motion to quash the writ of garnishment is concerned, that motion should be sustained.

■ Mandamus and not execution is the remedy which is available to enforce a judgment against a municipal corporation. United States ex rel. v. Saunders (8 C. C. A.) 124 F. 124, 126. It "is the legal substitute for the writ of execution to enforce judgments against private parties." In recognition of this rule the plaintiff as relator has properly instituted an ancillary proceeding in mandamus against the officers and members of the board of supervisors of the district to require them to pay the judgment out of funds which they have.

### Statement of Question.

2. Now the principal question of law involved in this case is this: With bonds in a large amount outstanding, matured, unpaid; with a relatively small amount collected and available to pay them; with a judgment had by one bondholder for an amount which the sum collected and available is sufficient to discharge, but from which, if so used, little or nothing will be left for others—does the law permit or require compulsion of payment to the one bondholder having judgment.

### Mandamus Limited by Equitable Principles.

■■ 3. The writ of mandamus is the substitute for the writ of execution when the judgment debtor is a municipal corporation. While it is the substitute, it is not always equally efficacious. If this drainage district were a private corporation, owning a limited amount of property not sufficient to pay all its debts, a judgment creditor could have execution and could seize its property for the satisfaction of its judgment, and that without regard to whether it had property enough remaining to pay other creditors. Vigilantibus et non dormientibus jura subveniunt. Mandamus, however, is not quite so remorseless as execution. It is a legal remedy indeed, but its issuance is largely controlled by equitable principles and it is awarded, not as a matter of right, but in the exercise of sound judicial discretion. Duncan Townsite Co. v. Lane, 245 U. S. 308, 311, 38 S. Ct. 99, 62 L. Ed. 309, In re Skinner & Eddy Corporation, 265 U. S. 86, 95, 44 S. Ct. 446, 68 L. Ed. 912.

In the exercise of that discretion which governs the issuance of the peremptory writ of mandamus the court must take into consideration equitable principles, including the maxim that "equality is equity."

■■ 4. Now there can be no question that whether the relator here is entitled to a peremptory writ of mandamus or ever will be so entitled (to the extent to which he asks it) requires consideration of whether the equitable principle just referred to has any application in this case. And it may be said at once that it has no application if all the bondholders of the drainage district whose bonds matured contemporaneously with those of Snower will certainly be paid, whether soon or late. The maxim "equality is equity" must be read in connection with another maxim that "equity aids the vigilant." If there is a fund either existing or certainly hereafter to come into existence out of which all may have their claims discharged, then equitable principles do not prevent the issuance of a writ of mandamus notwithstanding it will secure for one bondholder priority in payment.

### State ex rel. v. Drainage District (Mo. Sup.) supra, Considered.

That this is true I consider to be conclusively established by the decision of the Supreme Court of Missouri (and we are dealing here with Missouri law and Missouri stat-

934

utes) in State ex rel. v. Drainage District, supra. Without quoting from that case in extenso, it is sufficient to say that it squarely holds that a bondholder may have a peremptory writ of mandamus against a drainage district to compel the payment of his bonds out of funds which have been collected by taxation for the purpose of paying bonds, although the fund collected is insufficient to pay all bonds. It is said in that case by the Missouri court that the clear purport of the applicable statutes "places upon the board of supervisors the imperative duty to pay matured and maturing bonds and interest installments as long and as often as funds are available for that purpose." The case recognizes the equitable principles which might prevent the issuance of a peremptory writ of mandamus, but holds that they have no application for that in that case there was no showing that "the power with which (the) Drainage District is armed to assess, levy and collect taxes for the purpose of paying its bonds and the interest thereon, has been exhausted nor that the future exercise of that power will not be fruitful in obtaining the necessary funds."

In view of the foregoing, I conceive that there is only one query remaining. That is, under the facts of this case, can it be said with any degree of certainty that the fund (not the fund collected only, but the fund which may be collected) out of which bondholders are to be paid will be insufficient to pay all?

[10] In the present stage of this proceeding we must go for our facts to the pleadings, the petition for the writ and the return thereto, and must, of course, accept as true the admissions and allegations of fact which are set out in the return. Before, however, the pleadings are examined to ascertain the facts, it is necessary to consider the statutes wherein provision is made for the payment of indebtedness incurred by a drainage district.

### Summary of Applicable Statutes.

The Missouri statutes provide a complete system and procedure for the accomplishment of the purposes for which drainage districts are established. So far as the methods for providing funds for those purposes are concerned, the procedure is this: Commissioners assess in definite amounts benefits which lands within a district will receive from the improvement to be constructed. Section 10755, R. S. Mo. 1929 (Mo. St. Ann. § 10755). A tax is imposed against each parcel of land in the district for "such portion of said benefits" as will be necessary to pay indebtedness and for other drainage district purposes. Section 10759, R. S. 1929 (Mo. St. Ann. § 10759). Provision is made for the levy of annual installments of the tax laid. Section 10760, R. S. 1929 (Mo. St. Ann. § 10760). The taxes become liens upon the lands subject only to the liens of general taxes. Section 10764, R. S. 1929 (Mo. St. Ann. § 10764). If there is delinquency in the payment of these taxes it is the duty of the drainage district, by its attorney, to enforce those liens in appropriate actions within six months "after December 31st of the year for which said taxes were levied." After judgments the lands subject to the liens may be sold and the proceeds of those sales are required to be paid to the treasurer of the district. Section 10765, R. S. 1929 (Mo. St. Ann. § 10765). The board of supervisors of the district is empowered, where upon a sale for delinquent taxes the amount of the tax is not bid, itself to bid, in the name of the drainage district, the full amount due and so to acquire title for the district to the lands sold. Thereafter it may sell the lands so acquired, the purchase price thereof going into the treasury of the district. Section 10766, R. S. 1929 (Mo. St. Ann. § 10766).

### Insufficiency of Return.

With this summary of the statutory procedure for the collection of funds with which to pay drainage district indebtedness before us, we look now to the return of the respondents in this case. All that is to be found in it which in any way distinguishes this case from the case of State ex rel. v. Drainage District, supra, is contained in one paragraph, as follows: "Respondents further state that due to floods, droughts, decline in value of lands and farm products, combined with prevailing conditions of depression, all of which conditions peculiarly and especially affect the bottom lands in said district, the value of lands in said district and the ability of land owners to pay taxes have so declined and decreased that it is impossible to collect or enforce the payment of any considerable amount of taxes; that there is no market or sale for said bottom land and the payment of assessments thereon cannot be enforced by judgment and sale; that if present conditions continue it will be several years, if at all, before an amount can be realized from taxation equal to the present amount of defaulted obligations; that by reason of such conditions and the decline in value of said lands, the district is now and will be unable to meet its obligation in full and it is and will be impossible to collect or

to enforce the payment of a sufficient amount of the benefits assessed against said lands to pay in full all of the bonded indebtedness of said district."

It must be said that most of this paragraph is made up of mere conclusions as distinguished from facts, of mere speculation and prophecy. It contains no allegation of any compliance with the statutory provisions for discharging the indebtedness of the district. It does not allege that any suits have been filed to collect delinquent taxes; that any lands have been sold following such suits; that having been offered for sale there have been no purchasers; that other purchasers failing to make sufficient bids, the drainage district itself has bid in the lands and now holds them; that having bid them in and now holding them, the value of the lands so held is insufficient to meet the indebtedness of the district. In short, the generalizations of this paragraph of the return, in view of the statutory procedure provided for and the failure of the return to allege any compliance or attempt to comply with that procedure, are wholly insufficient to support a conclusion that there will never be a fund out of which all bondholders may be paid in full. This case is not, therefore, within the exception to the rule stated in State ex rel. v. Drainage District; it is within the rule of that case.

I consider that it is not necessary to discuss cases from other jurisdictions. I have read the cases cited. Some conflict of views is presented by them. One, State ex rel. v. Livingston, 139 So. 360, decided by the Supreme Court of Florida, is directly in point and is conceded by the respondents and intervener to support relator's contention in this case. I do not particularly discuss that case, however, nor other cases, since I think the Missouri case is in point and controls and that under it, upon the pleadings, the relator is entitled to a peremptory writ.

5. I should add that I have considered whether it might not be proper to allow respondents to amend their return so as to allege facts which would bring the case within the exception to the rule heretofore discussed. I assume, however, that the truth is that no effort has been made by this drainage district to enforce collection of the taxes as provided for in the statutes and that therefore an amendment is impossible. If possibly I am wrong in that assumption, the matter of amendment may be later presented.

I make orders in the case as follows:

I. Order. The motion of the defendant the Hope drainage district to quash the execution and dissolve the garnishment heretofore issued in this case having been duly considered by the court, and the court being fully advised in the premises, is by the court sustained. The execution and garnishment are quashed. It is so ordered.

II. Order. Plaintiff's motion to require garnishee to pay into court the money in its hands belonging to the defendant having been duly considered by the court, and the court being fully advised in the premises, is by the court overruled. It is so ordered.

III. Order. Relator's motion for judgment on the pleadings and for a peremptory writ of mandamus having been duly considered by the court, and the court being fully advised in the premises, is sustained. It is so ordered. And it is further ordered that counsel for relator prepare and submit for approval and entry an appropriate form of judgment.