McNULTY v. NATIONAL MEDIATION BOARD et al.

District Court, N. D. New York.

Dec. 28, 1936.

Barkhuff & Conway, of Albany, N. Y. (Earl Barkhuff, of Albany, N. Y., of counsel), for plaintiffs.

Joseph Rosch and James L. Fitzgerald, both of Albany, N. Y., for Delaware & Hudson R. Corporation.

Frank L. Mulholland, of Toledo, Ohio, and George J. Hatt, 2nd, of Albany, N. Y., for defendants Order of Railroad Telegraphers, E. J. Manion, B. C. Lewis, and John Rebman.

COOPER, District Judge.

This is a suit in equity arising under the Railway Labor Act as amended June 21, 1934, and particularly section 2 of that act (45 U.S.C.A. § 152).

The plaintiff sues on behalf of himself and 193 employees, constituting a majority, in station, tower, and telegraph service of the defendant carrier.

The other parties to the action are the Order of Railway Telegraphers (hereinafter called the O. R. T.), its president and vice-president, and John N. Rebman, the general chairman of Division No. 12 of the Order of Railroad Telegraphers, the National Mediation Board, and the members thereof, and the Delaware & Hudson Railroad Corporation, the carrier involved.

The plaintiff seeks to enjoin the defendant railroad, its officers, agents, etc., from treating with the O. R. T. its officers, agents, etc., as representatives of the employees in that branch of the service on its lines.

The plaintiff also seeks to enjoin the defendant O. R. T. and the defendants E. J. Manion, B. C. Lewis, John N. Rebman, and other officers from treating with the defendant railroad as representatives of the employees in the stated branch of service on the defendant railroad.

The plaintiff further seeks to compel the National Mediation Board as created under the Railway Labor Act (45 U.S.C.A. § 154) to hold a new election among such employees to determine who shall represent such employees or, in the absence of a new election, to require the defendant railroad to treat with the plaintiff as the duly selected representative in collective bargaining of such employees.

The defendant O. R. T. filed a cross-complaint in which it seeks affirmative relief by way of mandatory injunction requiring the defendant carrier to treat with the defendant O. R. T. as representative of the defendant carrier's employees in the stated branch of the service in accordance with the certificate of the defendant National Mediation Board and by way of prohibitory injunction enjoining the cross-defendant railway from interfering with, influencing, or coercing its employees in respect to their right to select their own representatives in collective bargaining; from discouraging or preventing the employees from joining the O. R. T. and from entering into any contract concerning wages and working conditions with plaintiff or any one other than O. R. T.

The defendant carrier seeks affirmative relief by way of prohibitory injunction forbidding the O. R. T. and defendant National Mediation Board from requiring the carrier to treat with the O. R. T. as the duly chosen representative of its employees in such branch of the service in collective bargaining. The defendant National Mediation Board did not appear in this action, and on motion of the O. R. T. and with the consent of the plaintiff the complaint was dismissed as to the Board and the said Board was eliminated as a party to this action.

## The Facts.

The facts are somewhat voluminous and involved, though without substantial dispute.

Prior to 1925, the employees of the defendant carrier, engaged in such branch of the service, were employed under a contract negotiated by the defendant O. R. T., and by 1925 this contract had been superseded by individual contracts between the carrier and the men engaged in such service, which provided how such employees' salary should be paid and further provided that no one should be authorized to represent the employees in matters of wages or of working conditions.

This individual contract system has continued among this class of employees from 1925 down to the time of the trial. For some time prior to January, 1935, and more especially during the year 1934, the defendant O. R. T. again became active among such employees of the defendant carrier. Petitions were circulated among such employees addressed to the defendant E. J. Manion as president of the O. R. T., requesting that the necessary officers of the defendant O. R. T. organize and make the defendant O. R. T. an effective representative organization and pledging the support and assistance of the signers thereof together with membership in the O. R. T. After some effort this petition, signed by 85 or 87 out of approximately 322 men in the class of service involved, was forwarded to said defendant Manion.

On January 11, 1935, the defendant Rebman, signing himself as general chairman of Division No. 12 of the Order of Railroad Telegraphers, sent a letter to the vice-president and general manager of the defendant carrier, stating that Division No. 12 of the Order of Railroad Telegraphers of the defendant carrier had been organized and a general committee elected and that written authorization had been given the general committee by a majority of the employees engaged in this class of service authorizing the defendant O. R. T. to represent and secure for them a schedule covering wages and working conditions.

Attached to the letter was one of the authorizations and request for conference for the purpose of presenting a copy of the schedule and making arrangements for further negotiations and agreement.

This communication was formally acknowledged.

On January 29, 1935, the local branch of O. R. T. again requested a conference with the proper officials of the defendant railway for the purpose of negotiating an agreement upon wages and working conditions and inclosed a copy of a proposed agreement.

On January 31, 1935, Mr. F. L. Hanlon, chairman of the Board of Discipling Officers of the railway, replied to the effect that his board would meet with the representatives of the O. R. T. on February 5, 1935.

At the time this claim to represent a majority of the employees in the branch of service involved was made, the defendant carrier held individual contracts executed by more than a majority of the men involved in this class of service.

Claiming that it was for the purpose of ascertaining whether the defendant O. R. T. or Division No. 12 of the O. R. T. did in fact represent a majority of the employees engaged in this branch of the service, the defendant carrier conducted a canvass of such employees in January, 1935. In conducting this canvass, the railroad company submitted to each employee of this class of service a paper containing a copy of the individual contract and election of status, reading as follows:

"The Delaware & Hudson Railroad Corporation.

"———— 193—.

"I hereby make request that the status of my employment be changed effective ———— from an hourly to a monthly basis, and that hereafter my salary be paid to me semi-monthly on the basis of a monthly rate equivalent to one twelfth of the aggregate amount per annum of my present hourly rate. Further recognizing that the position of ———— is one of trust, confidential in nature, I desire to continue my employment subject to all the rules and regulations heretofore promulgated by the company for the government of ———— with the further understanding that no one is or will be authorized to represent me in matters of wages and working conditions."

First statement: "I still wish to be governed by the above contract. I have not delegated the order of Railroad Telegraphers or any other organization or individual to represent me."

The second statement said: "I do not desire to continue my employment under the above contract and have designated the

Order of Railroad Telegraphers to represent me."

In addition to the above document, Hanlon caused to be prepared a statement entitled "Comparison of present rates of pay of Agents, Telegraphers and Towermen with potential monthly earnings based on Organization and Government Activity." This document presents a comparison of the present rate of pay of each employee with what (as claimed) the earnings might have been under organization activity.

As a result of this canvass by the defendant carrier, 178 employees out of a total of approximately 322 then engaged in this branch of the service signed the first statement indicating that they desired to be governed by the individual contract and had not delegated the Order of Railroad Telegraphers or any other organization or individual to represent them.

On the 5th day of February, 1935, the defendant carrier notified Rebman as general chairman of Division No. 12 of the Order of Railroad Telegraphers of the result of the canvass conducted by the defendant and advised defendant Rebman that, in view of the fact that more than a majority of the employees had indicated their·desire to be governed by the individual contract, it was impossible for the Order of Railroad Telegraphers to represent a majority of said employees, and for that reason the defendant carrier declined to treat with the O. R. T. as the representatives of the employees in that class of service.

On February 18, 1936, the Order of Railroad Telegraphers invoked the services of the National Mediation Board to settle the dispute among said employees as to who were the representatives of such employees designated and authorized to represent them for the purposes of the Railway Labor Act, 45 U.S.C.A. § 151 et seq. Following this invocation, the National Mediation Board on the 6th day of March, 1935, sent one of its mediators, Mr. William F. Mitchell, to Albany, N. Y., for the purpose of mediating or settling the dispute.

The mediator arrived in Albany on the evening of March 6, 1935, and the next morning called at the office of H. W. Bates, defendant's assistant to the general manager of personnel, and the next day saw the aforesaid Mr. Hanlon, where he saw the individual contracts signed by the employees and discovered several names affixed to the authorizations presented to the Board.

In his investigation into the situation he was unable to find any other organization or individual opposed to O. R. T. or who wanted to represent the men or to be named on the ballot.

Mr. Mitchell determined on March 11, 1935, that a secret ballot should be taken on the question of who was the authorized representative of the employees and recommended to the National Mediation Board that such action be taken and obtained authority from the Board to proceed with the election.

Between March 11, 1935, and March 13, 1935, Mr. Mitchell had notices of the election, ballots, and eligible lists printed and caused copies of the notice, ballot and eligible list to be sent out by railroad mail on the afternoon of March 14, 1935, to the several points on the railroad system where the vote was to be taken.

The form of ballot was as follows:

"If you desire representation by the order of Railroad Telegraphers mark an 'X' in this square.

"If you desire representation by any other organization or individual write in name and mark an 'X' in the square."

On the morning of March 15, 1935, Mr. Mitchell, accompanied by Mr. Rood, as party observer for the Order of Railroad Telegraphers, and by the plaintiff, as party observer for those opposed to representation by the Order of Railroad Telegraphers, started to take the vote. The plaintiff acted as one of the party observers, March 15th, 16th, and 18th, and then his place was taken by J. E. Pratt, and the taking of the vote was completed on or before March 23, 1935. On that day Mr. Mitchell, Mr. Rood, Mr. Pratt, the plaintiff, and the defendant John N. Rebman met in the city of Albany and counted the vote and Mr. Mitchell prepared and signed a report of the election, certifying the following to be the result:

Number of employees on list of eligible voters...................... 322.
Number voting for representation by the Order of Railroad Telegraphers. 178.
Number voting for representation by any other organization or individual 72.
Number of illegal ballots not allocated to either party.................... 50.

The party observers signed an attestation attached to the report, stating that the election was fairly conducted, that the secrecy of the ballot was kept inviolate, and that the tabulation of the vote. was accurate and complete. The plaintiff and Mr. Pratt signed "under protest."

When asked to explain the reason for the protest, they stated, among other things, that the form of the ballot was unfair because it was easier to vote for the O. R. T. than for any other organization or individual and also that insufficient notice of the election had been given to eligible voters.

### Facts After Voting.

On March 25, 1935, the plaintiff, Mr. Pratt, and two other employees, Mr. Ward and Mr. Flannery, protested the election to the National Mediation Board by telegram and by letter and petitioned the Board for a new vote, setting forth, among other things:

"(A) That sufficient notice of the election was not given and that many of the employees had no knowledge or information that an election was to be held nor the purpose thereof.

"(B) That the ballot used in the election was unfair and did not give the employees a fair opportunity of voting for individual representation or for any representation except by the order of Railroad Telegraphers for the reason that the name of the Order of Railroad Telegraphers was printed on the ballot and the only thing that was necessary to be done in order to vote in favor of the order of Railroad Telegraphers was to put an 'X' in the square to the right of the name of the Order of Railroad Telegraphers whereas, in order to vote for any other organization or individual it was necessary to write in the name of the organization or individual voted for and also put an 'X' in the square to the right of the name so written.

"(C) That the employees who were opposed to representation by the Order of Railroad Telegraphers had no opportunity to examine the notice of election and the proposed ballot prior to its promulgation and were given no voice whatever in regard to how the ballot should be prepared or a chance to nominate a candidate for representative to oppose the Order of Railroad Telegraphers.

"(D) That a number of employees did not vote in the election because of absence or disinclination on the part of the em-

ployee to cast a vote until they had had sufficient time to study the notice of election and acquire information as to the purpose thereof.

"(E) That the party observers were not given an opportunity to acquaint the employees with the nature and purpose of the election and that employees voted prior to the posting or receipt of the notice of election."

On April 1, 1935, the National Mediation Board, by letter addressed to the plaintiff, acknowledged the receipt of the protest and advised that after due consideration the Board had issued a certification, a copy of which was inclosed. This certification was as follows:

| "In the Matter of | |
|---|---|
| Representation of Employees of the Delaware and Hudson Railroad Corporation Station, Tower and Telegraph Service. | Case R–92. Certification. April 1, 1935. |

"A dispute having arisen among the employees in Station, tower and telegraph service of the Delaware and Hudson Railroad Corporation as to who are the duly designated representatives in accordance with the requirements of the Railway Labor Act, as amended, the National Mediation Board directed its mediator, Wm. F. Mitchell, Jr., to investigate the dispute and to take a secret ballot to determine the choice of the employees.

"Following is the result of the election as reported by the Mediator and attested to by the party observers:

| | |
|---|---|
| Number of employes on eligible list of voters, | 322. |
| Number of employes voting for representation by the Order of Railroad Telegraphers, | 178. |
| Number of employes voting for representation by any other organization or individual, | 72. |
| Number of void ballots, | 50. |

"On the basis of the investigation and Mediators report of the result of the election, the National Mediation Board hereby certifies that the Order of Railroad Telegraphers has been duly designated and authorized to represent the employees in Station, Tower and Telegraph service of the Delaware & Hudson Railroad Corporation.

"By order of the National Mediation Board,

"George A. Cook,
"Secretary."

The Board also sent the same certification to the defendant Delaware & Hudson Railroad Corporation about the same time.

Between April 1, 1935, and April 13, 1935, plaintiff and associates conducted a canvass of the employees. This canvass was made separately on each of the four divisions of the railroad. On the Pennsylvania Division there were 68 eligible employees; 59 signed in favor of the plaintiff and Harry Fink as their representatives. On the Susquehanna Division, where there were 90 eligible employees, 41 signed in favor of H. J. Ward and J. W. McNamara as their representatives. On the Champlain Division, where there were 56 eligible employees, 37 signed in favor of Fred Flannery and E. S. Stoughton as their representatives.

The form of the authorization which was used on each division, with the exception of the names which were filled in as above stated, was as follows: "The undersigned authorize ———, Agent, the Delaware & Hudson Railroad Corporation, and ———, Telegrapher, the Delaware & Hudson Corporation, to represent them in the conducting of any future election that may be held relative to representation."

Photographic copies of said authorizations were mailed to the National Mediation Board, April 13, 1935, by the plaintiff as chairman of the committee which made the canvass, and in the communication to the Board accompanying said photostatic copies the plaintiff as chairman of said committee again requested the Board to conduct another election.

About the same time, the plaintiff filed with the defendant railway photostatic copies of the authorization above set forth and insisted that the railroad deal with him as representative of a majority of the employees.

The defendant railroad notified the Board of the above facts and stated that its officer (Bates) had been informed that the men did not understand the ballot and preferred to continue in individual contract relation as before.

Mr. Cook for the Board stated that the photostatic copies received by the Board from plaintiff did not authorize any one person or individual to represent the entire group and that there was no evidence indicating to the Board that the men did not desire the O. R. T. to represent them.

The National Mediation Board acknowledged the receipt of said authorizations and the communication accompanying the same on April 19, 1935, and, among other things, stated that a majority of the employees in this class of service had not voted in favor of the same representatives on account of the fact that the employees signing said authorizations on each of the four divisions of the railroad had voted in favor of different representation.

Between April 24, 1935, and May 5, 1935, another canvass was taken of the employees in this class of service by plaintiff and his associates, and as the result of this canvass 193 signed the following authorization:

"Ballot.

"I hereby authorize Mr. J. J. McNulty, Agent, Scranton, Pa. to represent me in any matters which concern or affect me as an employee of the Delaware & Hudson Railroad Corporation."

At the time of taking this canvass there were 317 eligible employees. On May 5, 1935, photostatic copies of 193 of said ballots were sent to the National Mediation Board by the plaintiff with a communication advising the Board that the plaintiff had served notice upon the management of the Delaware & Hudson Railroad Corporation that he represented the employees in this branch of the service and had furnished the railroad corporation with photostatic copies of said ballots, and further that he had protested to the officers of the railroad corporation against any recognition of the Order of Railroad Telegraphers as the representative of the employees.

On May 5, 1935, the plaintiff forwarded the 194th ballot to the National Mediation Board. The Board acknowledged the receipt of said ballots and took no further action. The National Mediation Board, after certifying to the carrier on April 1, 1935, that the Order of Railroad Telegraphers had been duly designated and authorized to represent the employees in this class of service, on April 30, 1935, advised the railroad corporation that it could not entertain a new dispute involving said employees until the certification made by the Board April 1, 1935, was honored by the carrier and until the carrier shall treat with the representative so certified as the representative of the class of craft for the purposes of the Railway Labor Act.

Thereupon McNulty, the plaintiff, brought this suit upon behalf of himself

and the other 193 men who designated him to represent them.

## Questions of Law.

· The object of the Railway Labor Act as declared in section 2 thereof (45 U.S. C.A. § 151a) is, among other things, to avoid interruption to traffic; to forbid interference with the right of employees to join a labor organization; to provide for prompt settlement of all disputes relating to rates of pay and working conditions.

Subdivisions 4 and 9 of section 152 of that act are in part as follows:

"*Fourth.* *Organization and collective bargaining; freedom from interference by carrier; assistance in organizing or maintaining organization by carrier forbidden; deduction of dues from wages forbidden*

"Employees shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter. No carrier, its officers or agents, shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees.

"*Ninth.* *Disputes as to identity of representatives; designation by Mediation Board; secret elections*

"If any dispute shall arise among a carrier's employees as to who are the representatives of such employees designated and authorized in accordance with the requirements of this chapter, it shall be the duty of the Mediation Board, upon the request of either party to the dispute, to investigate such dispute and to certify to both parties, in writing, within thirty days after the receipt of the invocation of its services, the name or names of the individuals or organizations that have been designated and authorized to represent the employees involved in the dispute, and certify the same to the carrier. Upon receipt of such certification the carrier shall treat with the representatives so certified as the representative of the craft or class for the purposes of this chapter. In such an investigation, the Mediation Board shall be authorized to take a secret ballot of the employees involved, or to utilize any other appropriate method."

The plaintiff and the defendant carrier question the constitutionality of the act and also the power of the court to grant a mandatory injunction. Without discussion, the court will assume for the purposes of this suit that the act is constitutional.

Without further discussion the court will also assume that, in a proper suit by proper parties, it has power to grant a mandatory injunction to carry out the findings of the Board. Virginian Railway Company v. System Federation No. 40 et al., 84 F. (2d) 641 (C.C.A. 4, 1936).

The defendant O. R. T. contends that, since the National Mediation Board is no longer a party defendant, the court has no power to grant any order or injunction affecting that Board.

This court will assume that, in the absence of the Board as a party defendant, it can make no order or injunction directly affecting the Board mandatory in its character or in the nature of mandamus.

The defendant O. R. T. also seems to contend that, since the evidence here does not contain the full record of the proceedings before the Board, the court can do nothing but order the Board's decision to be carried into effect.

But, since the defendant O. R. T. also says that "the principal question which the Court must determine is whether the election was fairly and properly conducted," this must be deemed to qualify the last-stated contention.

And since the defendant O. R. T. asks the court to grant mandatory injunction compelling the defendant railway to treat with the representatives of the employees in the stated branch of the service as certified to the railway by the Board, if the right to such injunction cannot be determined without the full record of the proceedings before the Board, the defendant O. R. T. would seem to labor under like handicap as confronts the plaintiff and the defendant in seeking relief at the hands of the court and would not be entitled to the relief in this respect which it seeks.

So it may be taken that the defendant O. R. T.'s contention in this respect is that no review of the Board's action and no order directly affecting the Board can be made without the full record of the Board being before the court and then the court's action is limited to a determination that the Board's action is without factual support, exceeds its legal powers, or is arbitrary, capricious, or fraudulent, as to which

limitation upon the court's power many cases are cited.

If the defendant O. R. T.'s contention is that the court has no power to restrain a carrier from treating with the representatives certified by the Board without the Board being a party defendant and the full Board record being before the court, the case of Association of Clerical Employees of A. T. & S. F. Ry. System v. Brotherhood of Ry. and S. S. Clerks, 85 F.(2d) 152 (C.C.A. 7), seems to indicate the contrary, for in that case the company union sought to restrain the carrier from treating with the National Brotherhood, which was certified by the Board as the chosen representative of the employees. The Board was evidently not a party to the suit nor apparently was the Board's record before that court.

The complaint was dismissed, not because of the absence of the Board as a party or of the record, but because the court held that the complaint showed a fair election and a majority vote for the National Brotherhood.

True, the court did not discuss the lack of the Board as a party or its record.

■ But, since the defendant O. R. T. asks a mandatory injunction, which is the converse of the prohibitory injunction asked by the plaintiff and the defendant railway and O. R. T. also asserts that the plaintiff is estopped from questioning the fairness of the election since he was an active participant therein (though the court decides nothing in relation to the question of estoppel), the matter may be simplified by deciding whether or not the defendant O. R. T. is entitled to a mandatory injunction. If so entitled, the plaintiff and defendant railway are not entitled to prohibitory injunction. If not so entitled, plaintiff and defendant railway need no prohibitory injunction, for it is manifest that the status quo will not be disturbed unless and until the Mediation Board again considers the matter, and then any decision this court could make on this branch of the case would no longer be effective.

This brings the discussion to the question of the defendant O. R. T's right to a mandatory injunction. The defendant O. R. T. concedes that the principal question is whether the election was fairly conducted.

The defendant also concedes that there are "only two recognized methods by which employees may negotiate with their employees, viz, individual contract and collective bargaining and that the individual contract method had prevailed upon the lines of the defendant carrier for many years prior to the election."

The record shows that the mediator could find no organization or individual who or which wanted to or was eligible to be named on the ballot as opponents to the O. R. T. as representative for collective bargaining.

And yet the Board, or rather the mediator, for all he did was to telephone the Board office and say what he proposed to do, prepared a ballot such as had been used to determine representation where there were contending company unions and national unions. In such a ballot he provided a place to vote for each of the contesting unions and an additional place in which to write the name of some third party or organization, as representative in collective bargaining.

In the case at bar there was no company union, and so he left out one of the three places to vote and had place for the designation of only two, the National Union and the unknown and unknowable party.

It is manifest that this ballot did not present the issue to the eligible voters.

The issue, of course, as the mediator admittedly found, was whether the men desired to continue under the individual contract method or the National Union representation.

Concerning these two methods, the O. R. T. brief says: "These two methods of employer-employee relationships are diametrically opposite, both in theory and practice. They have nothing in common. There can be no representation under the first method and representation is essential under the other."

But the employees had no opportunity to express a choice between these methods. They were in effect told that they must have representation for collective bargaining and were asked to elect between the National Union (O. R. T.) and an unknown.

Unless the statute in question is meant to compel a majority of the employees (not an individual employee) to surrender their constitutional rights to contract for their own services, and the defendant O. R. T. does not so contend, then the ballot in question in no real sense determines whether the employees wish to retain the old

method of individual bargaining, or prefer to change over to collective bargaining.

In short, the ballot is an artificial thing in no wise disclosing which method of contracting the majority wish, but merely shows that, if they must have collective bargaining, they preferred the O. R. T. to some unknown person or organization.

It is idle to say that "it was not necessary for the contract men to affirmatively vote their desire in order to win but merely necessary that their vote be against representation by the O. R. T."

Fifty employees tried to do just that by putting an X mark in the square opposite the words "if you desire representation by any other organization or individual mark an X in the square," but because they did not write in the name of some organization or individual as representative in collective bargaining, the votes were declared void and not counted.

The ballot gave them no opportunity to vote against representation by the O. R. T., for their choice was limited to representation by O. R. T. or by some unknown representative.

This balloting did not take place at a New England town meeting where the voters were assembled in one room and where, presumably, some one present presented the contending views of the questions upon which a vote was subsequently taken and every one understood how to vote for or against any proposition.

The voting took place over a railroad nearly 500 miles in length, running from mid-Pennsylvania to the Canadian line and the voting was done at a great many different places, at many of which there were only 2 or 3 eligible voters and at none of which were there more than 10 or 12. Moreover, there was no reasonable advance notice that voting or an election would take place. In many places the ballots arrived the morning of the voting or the night before. There had never been any previous discussion of representation as between the O. R. T. and some other organization. The mediator could find no organization or individual which or who offered himself as representative for collective bargaining.

The men were asked to vote in ignorance and in the dark without any previous discussion or agitation and without reasonable notice.

Confronted with such a ballot, many may have feared that some militant group might want to write in the name of the president of the railroad or some obnoxious foreman, and, believing that they had to select some one to represent them in collective bargaining, rather than take such chances of an unknown representative, they voted for the known O. R. T.

How they would have voted had the real issue before them been presented by the ballot, no one knows or can know until another ballot presenting that issue is taken.

The ballot might easily have presented the issue here; namely, collective bargaining or continuance of individual contract relation. The ballot might have been in some such form as this:

"If you desire representation by the Order of Railway Telegraphers mark an X in this square.

"If you desire the continuance of the individual contract relation with the D. & H. Railway Corporation, mark an X in this square. "

Or the ballot might have said:

"If You desire representation by the Order of Railway Telegraphers mark an X in the square under 'Yes.'

Yes.

"If you do not so desire, mark an X in the square under 'No.'

No.
"

In both cases there could have been an additional square in which to write in the name of some other representative.

It is said that the National Mediation Board determined upon the ballot and that it was prepared under the direction of the Board. The evidence is that the mediator telephoned the Board office at Washington, received authority to prepare a ballot and hold an election. The ballots were prepared by the mediator himself and he had them printed and caused their distribution by the so-called railway mail.

Moreover, it is clear that the court has much more evidence concerning the issue, the election, and its fairness than did the Board, for the court has the testimony of witnesses who participated and knew the situation which the Board manifestly did not have.

Shall the court by mandatory injunction compel these men to have collective bargaining when they may not want it and compel the road to treat with the O. R. T. as representative in collective bargaining in such circumstances as here exist. Clearly

not, unless the court has no other alternative. The defendant O. R. T. says there is no alternative. That defendant contends, if the court understands the argument, that, since the record of the proceedings before the Board are not in the record here, the court cannot go behind the certification of the Board and may only issue mandatory injunction for carrying the certification into effect. This is not quite consistent with the argument elsewhere made that the only question here is the fairness of the election.

The defendant O. R. T. contends that the court cannot interfere with the action of such an administrative body as the National Mediation Board, to which Congress has given certain powers and duties, unless that body has transgressed the powers given it, has acted without any evidence to support its findings, or in the purported exercise of its powers has made a decision or order which is arbitrary, capricious, or fraudulent. Defendant O. R. T. asserts that no such situation here exists.

This defendant cites various authorities relating to other administrative boards such as the Interstate Commerce Commission, Secretary of Labor in immigration cases, Federal Trade Commission, etc.

Cases cited under the act here in question are: Association of Clerical Employees of A., T. & S. F. Ry. System v. Brotherhood et al., 85 F.(2d) 152 (C.C.A. 7); Virginian Railway Co. v. System Federation No. 40, 84 F.(2d) 641 (C.C.A.4); Baltimore & O. R. Co. v. U. S. (D.C.) 5 F.Supp. 929; R. R. Trainmen v. National Mediation Board, C.C.H.Rep.Labor Law, Service 150029, D.C.Supreme Ct.,[1] Grand Ind. Bro. of Loc. Eng. v. Keenan (D.C.S. D.Fla.).[2]

The National Mediation Board is not like the I. C. C., the Secretary of Labor in immigration cases, and other like administrative boards, for it ordinarily holds no hearing and ordinarily makes no such record as do those bodies upon which a review may be had.

The defendant O. R. T. so concedes, for the brief says: "It is true that the National Mediation Board does not ordinarily conduct hearings at which transcripts of testimony are taken, but in any event it is well known to both parties that certain documentary evidence is gathered by the mediators and from other sources, which is carefully studied by the Board before its findings are made. It would be an easy matter for the parties to the suit to produce this evidence at the trial."

"Thus the Court is asked to find that the defendant acted, arbitrarily, capriciously or fraudulently, or without substantial evidence before it, where the Court does not know what evidence the Board did have before it."

The evidence here shows that the report of the mediator about the situation and the desirability or necessity for holding an election was made over the telephone.

It would seem that, if lack of the full record of the proceedings before the Board would defeat plaintiff, it would also defeat the defendant O. R. T. when the latter asks for the order of the court to compel the railway to treat with the O. R. T. as chosen representative of the employees.

This must be so unless the court must automatically issue its mandatory injunction without exercising any discretion whatever.

If the certification of the Board must under all circumstances be made effective by the court by mandatory injunction, it seems contrary to all previous understanding of the functions of a court of equity and a doctrine which, carried to extremes, might be fraught with danger to individual rights.

The statute provides (Section 2, subd. 4, 45 U.S.C.A. § 152, subd. 4) that the railway shall treat with the representatives certified by the Board and provides elsewhere (Section 2, subd. 10, 45 U.S.C.A. § 152, subd. 10) for penalties for noncompliance.

But no authorities have been cited by the defendant O. R. T. and none have been found by the court, holding that the court's conscience must be stifled and its discretion must be destroyed.

On the contrary, the authorities hold that the court's order must be made in the exercise of sound discretion. Texas & Pacific Railway Co. v. I. C. C., 162 U.S. 197, 16 S.Ct. 666, 683, 40 L.Ed. 940; Duncan Townsite Company v. Lane, 245 U.S. 308, 38 S.Ct. 99, 101, 62 L.Ed. 309; Morrison v. Work, 266 U.S. 481, 45 S.Ct. 149, 69 L.Ed. 394; Moor v. Texas & N. O. Ry. Co., 297 U.S. 101, 104, 56 S.Ct. 372, 373, 80 L.Ed. 509; East Tenn., Va. & Ga. Ry. Co.

---

[1] See 88 F.(2d) 757.　　　　　[2] See 87 F.(2d) 651.

504

v. I. C. C., 181 U.S. 1, 21 S.Ct. 516, 45 L. Ed. 719.

When the order of such a body (I.C. C.) is sought to be enforced, the Supreme Court said in the Texas & Pacific Case, supra: "The court ought not to accept the findings of the commission as a legal basis for its own action, but should either inquire into the facts on its own account, or send the case back to the commission to be lawfully proceeded in."

In the Duncan Case, supra, the court said: "Mandamus is an extraordinary remedial process which is awarded, not as a matter of right, but in the exercise of a sound judicial discretion."

■ A mandatory injunction is like a mandamus in all essential respects, though the latter is directed to a public officer to compel him to perform an administrative act as to which he has no discretion. '

In Morrison v. Work, 266 U.S. 481, at page 490, 45 S.Ct. 149, 153, 69 L.Ed. 394, the court said: "A mandatory injunction, like a mandamus, is an extraordinary remedial process, which is granted, not as a matter of right, but in the exercise of a sound judicial discretion."

Virginian Railway Co. v. System Federation No. 40, 84 F.(2d) 641 (C.C.A.June 1936), cited and relied upon by defendant O. R. T. Clearly this case holds that this court has power to enforce the findings of the Board, but nowhere does it even hint that the court must automatically enforce such findings regardless of its own conscience. On the contrary, the court's language clearly shows that it must be satisfied that the order should be enforced.

Construing this very act where a mandatory injunction alike in all respects to the one sought here was sought, the court said (84 F.(2d) 641, at page 646): " * * * and the case is peculiarly one calling for the exercise of the power of the. court to protect the rights of the employees and enforce the duty of the carrier by mandatory injunction, which is properly granted in the sound discretion of a court of equity"—citing various cases.

Moreover, in the System Federation No. 40 Case, supra, the National Mediation Board certified that System Fed. No. 40 had been chosen as representative of six crafts in the employ of the Virginian Railway. The District Court found that as to one craft (carmen and coach cleaners) a majority of the eligible voters did not participate in the election and refused to issue mandatory injunction requiring the railway to treat with System Fed. No. 40 as representative of this sixth craft (carmen and coach cleaners). There was no appeal from the refusal of the District Court to issue mandatory injunction as to the sixth craft, as disclosed by the C. C. A. opinion.

Here is a definite decision under this act as amended in 1934, making it clear beyond doubt that the court should not issue mandatory injunction when in the exercise of a sound discretion mandatory injunction should not be issued.

So here the court may grant or refuse the mandatory injunction upon the evidence relating to the fairness of the ballot and the voting. , The defendant O. R. T. substantially concedes this.

It follows, therefore, · that mandatory injunction on behalf of the O. R. T. should be denied.

The defendant O. R. T. also contends that it is entitled to injunction restraining the railway from interfering with the employees in joining the O. R. T., in voting for representation by O. R. T., or otherwise coercing or influencing them to vote for individual bargaining rather than collective bargaining, and that defendant railroad is entitled to no injunction against coercion exercised upon its employees.

The defendant O. R. T. admits that the statute forbids acts of interference by either party against the other, but says: "If the defendant O. R. T. and its officers and agents should commit or threaten to commit such acts as would be punishable under the criminal laws there is an adequate method of putting a stop to such acts as provided by those laws. Even in that case, however, the complaint would not be made by the railroad corporation, for acts threatened or committed against its industrial employees, but would necessarily be instituted by those employees who were threatened."

This necessarily means that the defendant railway has no equitable relief against coercion of its employees into joining the union. Subdivision 3 of section 152, 45 U. S.C.A., forbids interference by either party with the other and, if only one party may have injunctive relief and the other party no relief whatever, this subdivision, so far as the railway is concerned, is mere words without substance, force, or effect.

It is not to be questioned that there is a difference between the economic pressure which an employer may exert over the em-

ployee which may imperil the job and the other kind of pressure, which, so long as it is confined to argument, reason, and persuasion, is harmless and may be beneficial, but, if carried beyond those limits, may cause fear of unpopularity, possible injury, interference with the work of the reluctant employee, with his family or property or other detrimental effects.

The object of the statute is to prevent disputes, strikes, etc., which would interfere with the flow of interstate commerce over the nation's railways by facilitating and providing machinery for collective bargaining. Coercion by either party is expressly forbidden.

Is the court of equity to take cognizance of the claims of only one side?

Under the general principles of equity, one who seeks equity must do equity, and it is highly probable that, if coercion has been exercised or threatened upon the employees by any party to this suit, such coercion, if proved, would defeat equitable relief to such party. The defendant O. R. T. emphatically denies any acts of coercion upon the employees. However, that is not necessary to decide here, for the defendant O. R. T. must be defeated on other grounds.

The plaintiff and the defendant railway assert that the defendant O. R. T. has no standing in this court to prosecute a proceeding for the enforcement of the provisions of Subdivision 3 of the Railway Labor act as amended in 1934 (45 U.S.C.A. § 152, subd. 3), since no property rights of the O. R. T. are involved.

Subdivision 10 of the section is entitled "Violations; Prosecution and Penalties." The subdivision provides that violation of subdivision 4 (freedom from interference by carrier, etc.) and other subdivisions shall be a misdemeanor, and upon conviction the violator shall be subject to fine or imprisonment or both, and further provides that it shall be the duty of the United States Attorney of the proper district to prosecute for such violations.

This apparently is the sole method of enforcement of the provision of section 2 (45 U.S.C.A. § 152) in the public interest.

So far as mandatory injunction is concerned, the court has assumed that the defendant O. R. T. has standing to seek mandatory injunction, though no decided case so holds.

In Virginian Railway Co. v. System Federation No. 40, 84 F.(2d) 641, supra,

the complainant was not O. R. T. but the local union of employees, viz., System 40.

It has not been necessary to decide the question of the right of O. R. T. to seek mandatory injunction, since this court decides that it ought not, under the facts here presented, to issue such injunction.

But when it comes to the right of O. R. T. to an injunction restraining the carrier from doing any of the acts prohibited in subdivision 4, the question presents a different aspect.

The O. R. T. as such is not composed of employees of the defendant railway despite the fact that some employees of the railway are members of the Local Branch No. 12, which is a subordinate body or subsidiary of O. R. T. O. R. T. as such can have no property rights in employment with the carrier, for it has no employment with the defendant railway. Nor has it any other interest than an academic one in the subject, as to which it seeks a prohibitory injunction.

Especially is this so if this court is correct in its view that the O. R. T. is not entitled to a mandatory injunction to compel the defendant railway to treat with it as the duly chosen representative of the employees of the carrier in collective bargaining.

It cannot represent the public right, for the statute expressly provides in section 2, subd. 10, how the public right shall be vindicated and enforced by the designated public officers.

If the Division No. 12 of the Order of Railway Telegraphers were a party to this suit, the foregoing would not apply, for its members are employees of the defendant railway, and it would probably have such property rights as would entitle such employees to the protection of those rights by the court. But Division No. 12 is not a party.

John N. Rebman, as general chairman of Division No. 12, is a party defendant, but the division itself is not a party, as is the O. R. T. as well as its officers.

Upon the authority of Virginian Railway Co. v. System Federation No. 40 et al., 84 F.(2d) 641, which, though not binding on this court, is persuasive, it is probable that subdivision No. 12 of the O. R. T., representing its members as employees of the defendant railway, has such property rights as would entitle it to an injunction to restrain the defendant railway from committing acts in violation of subdivision

4 of section 2 (45 U.S.C.A. § 152, subd. 4), if such acts interfered with its right to represent the majority of the employees in collective bargaining as provided in section 2.

In the foregoing view of the rights and standing of the parties to this suit, it is not necessary to determine whether the defendant railway has violated in such manner as to warrant injunction.

The National Mediation Board not being a party to this suit, the court can make no order directly affecting that Board.

The defendant railway has offered no satisfactory proof of acts of unlawful interference by the O. R. T. with its rights or the rights of its employees in the matter of individual bargaining. Even if there were such proof, the defendant railway would, as has been held herein concerning the defendant O. R. T., be confronted with the same necessity of showing that it had not itself been guilty of such interference with the rights of the employees as is condemned by the statute or by the general principles of equity.

The railway company must also enter the court with clean hands before it can invoke the court's equity powers to restrain another, no matter how inequitable that other's conduct may have been.

The conclusion then is that no party is entitled to any affirmative relief.

The complaint and the cross-complaints are all dismissed without costs to any party against any other party.