In the Matter of the Application of HARRY WOLF, Petitioner, for an Order against LEWIS J. VALENTINE, as Commissioner of Police Department of the City of New York, and Chairman of the Board of Trustees of the Police Pension Fund of the City of New York, and FIORELLO H. LAGUARDIA and Others, as Members of the Board of Trustees of the Police Pension Fund of the City of New York, Respondents.

Supreme Court, Special Term, New York County, April 7, 1942.

*Samuel G. Coler*, for the petitioner.

*William C. Chanler, Corporation Counsel [William C. Chanler* and *Abraham Shapiro* of counsel], for the respondents.

Koch, J.   On January 15, 1942, petitioner filed an application for service retirement from the New York city police force at a pension of not less than one-half his salary.   He was then forty-four years old and had served as a policeman only two months more than the twenty years required to become eligible for retirement for service.   By virtue of the provisions of section B18–4.0 of the Administrative Code of the City of New York, petitioner acquired a legal right to be retired for service — a right protected by section 7 of article 5 of the State Constitution.   Nevertheless, the police pension board has hitherto taken no action upon the petitioner's application, and petitioner is still continuing in active service.   He has instituted the present proceeding in order to obtain an order of mandamus compelling the board of trustees of the police pension fund to approve his application and grant him retirement and a pension.

That petitioner possesses a clear legal right to request retirement and a pension is not disputed by the respondents.   They point out, however, that the granting or withholding of an order of mandamus is controlled by equitable principles and that a sound exercise of discretion may lead a court to refuse a mandamus even in aid of a clear legal right.   In *Matter of Warehousemen's Assn.* v. *Cosgrove* (241 N. Y. 580) our Court of Appeals declared that (p. 581) " The remedy of mandamus may be withheld where the enforcement of a strict legal right would work unnecessary hardship."   In *Matter of Coombs* v. *Edwards* (280 N. Y. 361) the petitioner sought mandamus directing the city council of Long Beach to include the unpaid amount of a judgment against the city in its budget for 1939.   The city pleaded its poor financial condition as a defense.   The Court of Appeals upheld the denial of the application notwithstanding the fact that the petitioner was seeking to enforce a clear legal right.   Judge Finch, writing for the court, said (p. 364): " The burden is thrown on the applicant for the order to demonstrate the necessity and propriety of its

use. Even then the court may consider by way of defense the hardship and injustice to the defendant, the conduct of the applicant and the interests of third persons. Although the order is classed as a legal remedy, equitable principles largely control its issuance. (*Duncan Townsite Co.* v. *Lane*, 245 U. S. 308.) While the applicant must present an issue for the enforcement of a clear legal right, yet even then the court may determine whether, in the exercise of a sound discretion, it shall grant or withhold the order." In *Duncan Townsite Co.* v. *Lane* (245 U. S. 308), cited with approval by Judge FINCH, the United States Supreme Court formulated the principles governing mandamus proceedings (pp. 311, 312): " Mandamus is an extraordinary remedial process which is awarded, not as a matter of right, but in the exercise of a sound judicial discretion. It issues to remedy a wrong, not to promote one; to compel the performance of a duty which ought to be performed, not to direct an act which will work a public or private mischief or will be within the strict letter of the law but in disregard of its spirit. Although classed as a legal remedy, its issuance is largely controlled by equitable principles." In *Matter of Black* v. *O'Brien* (264 N. Y. 272) an application for mandamus directing New York city to pay petitioner the city's full share of his salary as a Supreme Court justice was denied at Special Term. The Court of Appeals, in affirming, said (pp. 273, 274): " Even if we were to assume that part of the petitioner's salary as defined by the Constitution has been withheld, the court in the exercise of its discretion might deny the remedy of mandamus."

Application of these principles to the instant case would seem to require the denial of petitioner's motion in the exercise of a sound discretion.

Immediately after the Japanese attack upon Pearl Harbor, apparently prompted, in part at least, by the fear that they would have to serve longer hours as a result of the war emergency, many members of the police force applied for service retirement. In the first month there were forty-nine applications more than in any previous month in the history of the police department. Between January 6, 1942, and January 19, 1942, ninety-three additional applications for service retirement were filed. The police force of the city was already confronted with the likelihood of serious depletion by reason of the operation of the National Selective Service Act, for 13,000 of the members are of draft age. More than 2,200 members of the force are in the same category as petitioner, in that they are less than fifty-five years of age, and are eligible for service retirement because of more than twenty years' service. As the brief submitted by the city well states:

"Each of them could force his retirement at a time when the services of every able bodied, experienced policeman are vital to the protection of life and property within the City of New York and when the replacement of policemen by young able bodied men not subject to the draft is virtually impossible."

The mayor and the police commissioner have sought to meet the threat to the safety and welfare of the city, which the wholesale exodus from the police department presented, in a manner which gives as much consideration to the rights of those applying for retirement as is consistent with proper and adequate police protection of the lives and property of the city's inhabitants. A plan has been worked out, with the approval of the heads of the various organizations representing the men in the uniformed force of the police department, which is now in force, providing for the approval by the police pension board of applications for service retirement at the same rate as prevailed before Pearl Harbor, viz., thirty-nine per month. Priority is given to disabled applicants and thereafter to applicants who have served twenty-five years or more and who are at least fifty-five years of age. Applicants less than fifty-five years of age or who have served less than twenty-five years then get their turn to be retired. Under this plan the younger members of the force who suffer no disability are not denied the right to retire for service. The date when they may retire is merely postponed until their turn is reached after giving precedence to the applications of disabled and older men.

To grant the present motion for an order of mandamus would establish a precedent entitling more than 2,200 younger members of the police force to retire for service at a time when the public interest could not afford it. It would, in the language of the United States Supreme Court in *Duncan Townsite Co.* v. *Lane* (*supra*, 311), "work a public * * * mischief." A court applying equitable principles should not lend its assistance to accomplish such a result.

Motion denied.