JOHN OLBIS, RELATOR-PROSECUTOR, v. CITY COUNCIL OF THE CITY OF CLIFTON, BOARD OF ASSESSORS OF THE CITY OF CLIFTON ET AL., DEFENDANTS.

Argued March 4, 1939—Briefs Submitted April 7, 1939—Decided July 10, 1939.

Before Justice HEHER, at the Passaic Circuit.

For the relator-prosecutor, *Aubrey J. Elias.*

For the city of Clifton, *John G. Dluhy.*

For the State Highway Commissioner, *William J. McCormack,* assistant attorney-general.

HEHER, J. On June 18th, 1938, the relator-prosecutor, Olbis, the owner of a tract of vacant land abutting one hundred and fifty-nine feet on Piaget Avenue, in the City of Clifton, and extending back therefrom a depth of two hundred and fifty-four feet to Barclay Avenue, entered into an agreement with the State of New Jersey, through the State Highway Commissioner, for the sale and conveyance to the State, at the price of $2,893.80, of the entire frontage on Piaget Avenue to a uniform depth of forty-three feet, for the construction of State Highway Route 6 (Rev. 1927), section 8, Valley Road to Route 3, and on August 4th, 1938, made, executed and delivered to the State a deed of conveyance for that parcel. Thereupon, the State and Olbis joined in a petition to the City Council for an apportionment of the existing municipal liens; and on September 20th, 1938, that body adopted a resolution whereby an assessment lien for local improvements (then totaling with accrued interest the sum of $2,587.13) was "apportioned" to the parcel conveyed to the state, while the tax arrears (in the aggregate principal sum of $529.41) were apportioned on the basis of one-sixth thereof (amounting with interest to $116.14) to the lands so conveyed.

It is conceded that the latter parcel is approximately one-sixth of the whole of the Olbis tract; and, on the hypothesis that the Council in effect "refused to apportion the assessment lien" in accordance with the petition thus presented, Olbis prays a writ of *mandamus* commanding its apportionment "pursuant to the statute," or, in the event that the action taken be deemed an "apportionment," a writ of *certiorari* to vacate it as "not made in accordance with the statute."

In my view, the resolution reveals an assumption by the

Council of its statutory jurisdiction, albeit its exercise was ineffectual for the reasons to be presently stated. The municipality concedes that this is so. It argues that, by the "action taken [the adoption of the resolution], the lien was apportioned by placing against the portion * * * taken by the State for highway purposes a sum representing the cost of improvements and approximately one-sixth of the taxes accumulated thereon;" and, in defense of the resolution, it urges (a) that the "apportionment was made according to the valuations of the respective subdivisions at the time the liens were imposed;" (b) that the "assessments for improvements were properly chargeable against the portion taken for state highway purposes;" and (c) that the parcel taken "increased in value by reason of the improvements for which" the assessment was made, and the State, "by agreeing to pay for the land taken and the replacement of all improvements," has undertaken "to pay the cost" of the improvements, "and the same should therefore be paid to the City."

The statute commands that: "When part of a plot or parcel of land has or shall have been taken for the opening, widening or extension of a street in a municipality, all taxes, assessments and water rents which shall be liens upon the whole plot or parcel of land from which the plot or parcel has or shall have been taken, shall be equitably and justly apportioned between the plot or parcel so taken and the balance that shall remain in the same manner as other apportionments are made." *R. S.* 1937, 54:7-9.

The standard of apportionment is laid down in section 54:7-3. It provides that: "The apportionment * * * shall be made according to the values of the respective subdivisions at the time the respective charges were imposed or levied, unless the claim is justly chargeable only to a particular part of the whole parcel."

The proofs disclose no basis for the finding by the municipal governing body that the entire assessment "is justly chargeable" to the parcel sold and conveyed to the State. The improvements for which the assessment in question was levied consisted of the grading and paving of the highway, the installation of sidewalks and curbing, the building of a "sani-

tary sewer," and gas, water and sewer connections to the curb, all made in the year 1928; and the insistence is that the benefits of the improvements so made did not extend to the lands abutting on Barclay Avenue, and therefore "consideration should be given only to the property extending to the center of the block;" that "after the highway is constructed the property fronting on the new highway will have a depth of approximately eighty (80) feet;" that it is fairly inferable that "prosecutor obtained such a high price" for the parcel in question "because of the improvements represented by the assessment and the fact that the remainder of the property fronting on Piaget Avenue is damaged, by reducing the depth from approximately one hundred (100) feet to that of eighty (80) feet," thus making it "less desirable and useful because of the inadequate depth;" and that, in the circumstances "it is only fair and equitable that the portion of the tax lien representing the assessment should justly be against the property taken by the State along the front."

These contentions are plainly untenable. They ignore the uncontroverted evidence that the depth of the original Olbis tract between Piaget and Barclay Avenues was two hundred and fifty-four feet. Moreover, since the State has concededly undertaken to replace the improvements in the construction of the highway, it necessarily proceeds on the assumption that the land fronting on the new highway to a depth of eighty feet, merely because of "inadequate depth," has no value whatever. The proofs lend no support to this conclusion. Nor is there tangible evidence tending to show such a restriction of the benefits of these improvements. In fact, a much larger tract, of which the Olbis lands were a part, was originally assessed for benefits accruing from these improvements; and, upon the conveyance to Olbis, the amount of the instant assessment was apportioned to the whole of the lands so conveyed as the value of the benefits conferred upon that subdivision; hence, the necessity for the current apportionment petition.

It is also contended that the State, "in agreeing to replace these improvements is doing so in order to reduce the owner's claim for damages," and that, even though there be a replace-

ment of "all the improvements disturbed by the construction of the highway, * * * nevertheless the cost of the improvements is properly allocated to" the parcel taken, "and should be paid out of the moneys received by the owner for the same," since the prosecutor is "in effect being repaid for the improvements." It is pointed out that the existing pavement is to remain as a part of the new highway construction; and the argument is made that, "for that reason also, * * * the owner should pay, out of the amount received from the State, the cost of the improvement because the same is reflected" in the purchase price. It is said that this will constitute apportionment "according to the value of the several parcels"— citing *Luckenbach, &c., Inc.,* v. *Township of North Bergen,* 118 *N. J. L.* 348, and *Bowers* v. *Bloomfield,* 81 *N. J. Eq.* 163.

But this argument overlooks the fact that the improvements (with the exception of the pavement, which is not to be disturbed) are to be "replaced" by the state in such a manner as to enhance the value of the lands remaining to Olbis, abutting on the new highway, to the same, if not indeed a greater, degree as the parcel taken. The stipulated purchase price does not therefore include the cost of the original improvements.

And so I am of the view that the action taken was arbitrary and capricious, and not in conformance with the statutory standard.

But it is insisted that, even so, Olbis "is estopped from complaining about the method of apportionment."

This point is grounded in the testimony of the municipal director of finance that, some six months before the instant application for apportionment was made, the wife of relator-prosecutor, in response "to a letter addressed to Mr. Olbis" relating to the city's "tax title liens," called upon him, and, in the course of the conversation, stated that "the lien could not be satisfied at that time but that the property would no doubt be taken over by the State" for highway purposes, and requested a postponement of "any foreclosure proceedings until they were sure whether or not the State would take their property," and that "as a result of the conversation * * * no foreclosure proceedings were instituted."

Discussion is not needed to demonstrate the lack of the elements of estoppel in this situation. Moreover, the obvious design of section 54:7-9 of the Revised Statutes was to facilitate public improvements of the nature specified, by enabling the governmental authority to secure title to the needed land at its fair value, freed of all such municipal liens.

A writ of *certiorari* will accordingly issue; and, since it was agreed on the oral argument that there should be a final determination of the meritorious question as if the writ had issued in the first instance and a return had been made thereto, judgment may be entered—upon the making of a return to the writ—vacating the resolution under review, with costs, and remanding the cause for further proceedings in conformity with this opinion. The application for a *mandamus* may be renewed if necessary to secure further action upon the petition for apportionment.