19 N.J. Super. 86 (1952)
88 A.2d 1
CHARLES F. EVANS AND DOROTHY S. EVANS, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
RALPH VILLANI, MEYER C. ELLENSTEIN, JOHN B. KEENAN, LEO CARLIN, STEPHEN J. MORAN, THE BOARD OF COMMISSIONERS OF THE CITY OF NEWARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 24, 1952.
Decided April 22, 1952.
*87 Before Judges McGEEHAN, JAYNE, and GOLDMANN.
*88 Mr. Leo D. Burrell argued the cause for appellants (Messrs. Cox & Walburg, attorneys; Mr. William H.D. Cox of counsel.)
Mr. George B. Astley argued the cause for respondents (Mr. Charles Handler, attorney).
The opinion of the court was delivered by JAYNE, J.A.D.
In the mutually acknowledged circumstances existing in this particular case, were the plaintiffs in an action in lieu of mandamus entitled to the aid of the court to compel the defendants to apportion the municipal assessment pursuant to the provisions of R.S. 54:7-1, et seq.?
The plaintiffs were the owners of three contiguous parcels of meadowland in the City of Newark designated as lots Nos. 36, 38, and 50 in block 5020 on the assessment rolls, and comprising 24.865 acres. The city held tax lien certificates on all three parcels.
On November 30, 1950, the plaintiffs entered into an agreement to convey to the New Jersey Turnpike Authority by a bargain and sale deed containing a covenant against the grantors' acts for the purchase price of $49,200, a portion of the area consisting of 6.704 acres, which passed across and cut through the three parcels. The price was calculated upon the allowance of about $16,760 for the acquisition of the premises, $30,740 for the consequential damages to the remaining lands retained by the plaintiffs, and $1,700 for the estimated taxes (apparently on all three parcels) for the year 1951.
Chronologically stated, the city commissioners on October 4, 1950, authorized by resolution the foreclosure of the tax sale certificate covering lot No. 50. On December 21, 1950, the city instituted an action in the Chancery Division of this court to foreclose its tax lien on lot No. 50 in pursuance of the statute known as the "In Rem Tax Foreclosure Act (1948)." N.J.S.A. 54:5-104.29, et seq. On January 10, 1951, the foreclosure of the tax sale certificates pertaining to lots Nos. 36 and 38 was duly authorized. On February 26, 1951, the *89 plaintiffs conveyed the portions of the three parcels to the New Jersey Turnpike Authority in conformity with the terms of the agreement, and on February 28, 1951, the city instituted an action of like nature to foreclose its tax liens on lots Nos. 36 and 38.
At the consummation of the conveyance to the Turnpike Authority, the plaintiffs executed a "Closing Statement" which concluded as follows: "The above statement is hereby approved and the disbursement of moneys as indicated therein is hereby authorized and directed." In the statement there is an item entitled "Allowance for unpaid municipal liens" opposite which appears:

 "Taxes and Int to 2/20/51 16,319.34
 Addn int to 3/5/51 36.79
 1951 Est. tax 2,174.76[*] 18,530.89"

Beneath the item "Remarks" appears:
"[*] Estimated 1951 tax on premises in question and more to be held in escrow by Garden State Title Insurance Company and to be paid by it as the various installments become due with balance, if any, after the payments refundable to sellers after payment of all taxes, interest and cost through 1951." (Italics ours.)
The taxes for the year 1951 amounted to $2,481.62; those due on lots Nos. 36, 38, and 50 for prior years and for the first half of 1951 calculated as of June 26, 1951, totaled $17,012.49.
The plaintiffs caused a letter to be mailed to the city requesting an apportionment of the unpaid taxes between the portion of the premises conveyed to the Turnpike Authority and the remainder of the property retained by them. It is conceded that both of the tax foreclosure actions had been actually instituted before the representatives of the city received the application of the plaintiffs for the apportionment of the assessment. The city officials declined the request, whereupon the present independent action in lieu of mandamus was prosecuted by the plaintiffs in which a final judgment was entered that the plaintiffs "are not *90 entitled as a matter of right to the apportionment of tax liens and assessments under the statute, under the circumstances as they exist in this case, and they are relegated to their remedy of redemption under the In Rem Foreclosure Act as to the lots in question. * * *."
Undoubtedly among the considerations for the payment of the sum of $30,740 to the plaintiffs for the consequential depreciation in the value of the lands retained by the plaintiffs was their express relinquishment for themselves, their heirs, successors, and assigns of any and all right "of direct passage or access * * * to or from the highway constructed or to be constructed" on the premises conveyed to the Turnpike Authority.
It is evident that the sum of $18,530.89 of the price of $49,200 deposited in escrow was estimated to be sufficient to insure the payment of the delinquent taxes and the prospective taxes for the year 1951 assessed against the three lots in their entirety.
However, the endeavor of the plaintiffs in the face of the foreclosure actions to obtain an apportionment of the assessment is exceedingly perspicuous. Of the fund available in escrow they would prefer by means of the apportionment to subtract the amount necessary to liberate the conveyed lands from the tax liens, capture the balance of the fund, and let the city take the remaining landlocked and inaccesible parcels. Perhaps the achievement of that objective is conceived by them to be the more advantageous in that the statute requires the apportionment to be made "according to the values of the respective subdivisions at the time the respective charges were imposed or levied. * * *" R.S. 54:7-3. Observable, too, is R.S. 54:7-9 which relates to the equitable apportionment of tax liens "when part of a plot or parcel of land has or shall have been taken for the opening, widening or extension of a street in a municipality * * *." (Emphasis supplied.) But notice Lord v. Gifford, 67 N.J.L. 193 (Sup. Ct. 1901); Olbis v. Clifton, 123 N.J.L. 45 (Sup. Ct. 1939).
*91 A somewhat unique feature of the present case is that the money is available to discharge substantially, if not quite completely, all of the tax liens, and the plaintiffs agreed in the closing statement that "the disbursement of moneys as indicated therein is hereby authorized and directed."
It is nevertheless proposed on behalf of the plaintiffs that regardless of the circumstances and the possible or probable consequences, the statutory right to the requested apportionment is clear and certain. R.S. 54:7-3; 54:7-9.
The statutory right to have the municipal governing body make an apportionment of such a tax assessment is apparent, but is the right entirely unqualified? The present case seems to project the cogent questions: when and up to what stage in the authorized proceedings to collect the tax did the Legislature intend that the requested apportionment could be lawfully sought; and, secondly, should the compulsory process of the court be exerted to require the apportionment in the particular circumstances existing in the present action?
The Legislature in the article relative to suits in equity to foreclose the right of redemption (R.S. 54:5-85) and in the In Rem Tax Foreclosure Act (N.J.S.A. 54:5-104.31) declared that the provisions of those enactments should be "liberally construed as remedial legislation to encourage the barring of rights of redemption." (Emphasis supplied.)
It is indubitable that the In Rem Tax Foreclosure Act was designed to expedite the foreclosure of tax liens. See N.J.S.A. 54:5-104.55, 56; cf. Rule 3:81-15. While it permits "any person having or claiming to have a right, title or interest in, or to, or lien upon any parcel of land described in the petition" to file an answer in the action setting forth the "grounds of his defense," yet it provides that "No omission of any of the procedures or actions required by law in relation to levy and assessment shall be a defense." The defenses specifically allowed are the averred "invalidity of the tax lien, or the invalidity of the proceedings to sell or the invalidity of the sale." N.J.S.A. 54:5-104.52, 53, 54. Notwithstanding those observations, nothing is discernible in *92 the pertinent statutes which expressly terminates the privilege of an apportionment of a tax assessment upon the institution of an action to foreclose a tax certificate.
Certainly the right of redemption exists until the final judgment. N.J.S.A. 54:5-104.60. An apportionment of the basic assessment might in many instances be essentially incidental to the redemption. Moreover it is conceivable that in some cases justice and the equities might necessitate it. For examples, Wishner v. Nibur Realty Co., 106 N.J. Eq. 337 (Ch. 1930); Weber v. Keller, 117 N.J. Eq. 17 (E. & A. 1934). Cf. Stuyvesant Security Co. v. Dreyer, 103 N.J. Eq. 457 (Ch. 1928), affirmed 105 N.J. Eq. 585 (E. & A. 1930).
In contrast is the case of Bayonne v. Morris & Cumings Dredging Co., 113 N.J. Eq. 116 (E. & A. 1933), in which the state of case disclosed that the defendants unsuccessfully endeavored to obtain an apportionment which would result in a segregation of their uplands from the adjacent low and meadow lands. The motive exhibited in the present action appears to be a chip off the older block.
To thrust into the statute by means of a judicial construction a limitation terminating the right to apportionment after the institution of a foreclosure action or some qualification which would be applicable in some contingencies and not in others would be an audacious undertaking in which we need not indulge.
Our attention more readily fastens upon the inquiry whether facing the facts of the present case the trial judge committed reversible error in declining in his discretion to lend the compulsory process of the court to the plaintiffs to enable them to accomplish in their personal interests an object so patently disadvantageous to the public interests.
While prerogative writs have been superseded in this jurisdiction and a procedure substituted in lieu thereof (Rule 3:81-1), yet the established principles previously governing the allowance of such writs continue to be applicable to the *93 determination of the summary or final judgment to be rendered in the substituted form of action.
So, although the initial discretionary allowance of the writ and the writ itself are no longer recognized in our present practice and procedure, yet the modern action is in lieu thereof, and its prosecution continues to be an extraordinary remedial procedure of a prerogative character subject to the well settled principles heretofore governing the granting of such a type of remedy. 34 Am. Jur. 809, sec. 3. High's Extraordinary Legal Remedies (3d ed.), sec. 3, 4, 5, 6, 9, 430; 38 C.J. 544, sec. 8.
Mandamus was anciently designed to remedy a wrong, not to promote one. It has not been issued where it would contribute aid to the effectuation of a palpable injustice. Its issuance must be sought in good faith. Indeed, it may be refused when the purpose of the proceeding is to compel a technical or literal compliance with the law which would be contrary to its spirit. Duncan Townsite Co. v. Lane, 245 U.S. 308, 38 S.Ct. 99, 62 L.Ed. 309 (1917); Beronio v. Pension Commission of Hoboken, 130 N.J.L. 620, 624 (E. & A. 1943); Ferris, Extraordinary Legal Remedies 233, sec. 200; 2 Bailey on Habeas Corpus and Special Remedies 810; 34 Am. Jur. 830, sec. 34.
It may be regarded as the accepted doctrine that courts in the exercise of their discretionary power to grant an extraordinary legal remedy of a prerogative character will be to some extent controlled by equitable principles. The courts will act in view of all of the facts and circumstances, according due consideration to the equities, the efficacy or futility of the judgment and to whether the mandatory judgment will conduce to substantial justice or, on the contrary, tend toward injustice, hardship, or oppression. 34 Am. Jur. 833, sec. 40; 55 C.J.S. 31, sec. 9. They will particularly envision the public interests which may be implicated. The remedy in the nature of mandamus invoked in a matter of some measure of public concern ordinarily will be denied if compliance with such a mandate would *94 work a public injury or embarrassment. United States ex rel. Greathouse v. Dern, 289 U.S. 352, 53 S.Ct. 614, 77 L.Ed. 1250 (1933); Beronio v. Pension Commission of Hoboken, supra; 34 Am. Jur. 830, sec. 35.
No tender of payment accompanied the request for the apportionment or is interjected in the prosecution of the present action. The footprints betoken the wishful aftermath.
We are not justified in concluding that the trial judge arbitrarily or capriciously exercised his discretionary judicial power in the existing circumstances. The judgment under review is affirmed, and the temporary restraint against the prosecution of the foreclosure actions is vacated.