[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTIONS TO STRIKE AND MOTION FOR SUMMARY JUDGMENT
CT Page 8689
 I. INTRODUCTION
On February 17, 1995, the Planning Commission of the City of Meriden (the "Commission") voted 2-1 to deny a site plan application (the "application") filed by the plaintiff, Summitwood Associates Phase IV ("Summitwood"). This seemingly commonplace vote turns out, in retrospect, to have been problematic in the extreme. The motions now before the court, heard in a consolidated hearing on August 3, 1998, raise several complex issues concerning both the validity of the vote and the consequences of any invalidity. The central questions to be resolved are as follows: (1) Was Enrico Buccelli ("Buccelli"), one of the two persons voting to deny the application, a valid member of the Commission or a de facto officer entitled to vote? (2) Even if Buccelli was a valid member of the Commission or a defacto officer, were three votes required to deny the application in any event? (3) Is mandamus the appropriate legal vehicle to raise the claims just described? (4) Is the Zoning Enforcement Officer of Meriden (the "ZEO") a necessary or indispensable party to this action? (5) If a voting violation is found, does mandamus issue as a matter of right, or should the court hear evidence concerning the allegedly harmful or illegal consequences that would assertedly result from an issuance of the writ? (6) Are some of these claims foreclosed by an administrative appeal previously decided by this court? These questions are addressed below.
This mandamus action was commenced by service of process on September 24, 1996. Summitwood is the sole plaintiff, and the Commission is the sole defendant. Summitwood's complaint contains one count, alleging the invalidity of the vote described above and seeking a writ of mandamus.
On November 4, 1996, Victor and Anita Scaringe (the "Scaringes"), filed a motion to intervene in the action. The Scaringes allege that they own a home in Meriden, the property of which directly abuts Summitwood's property. They further contend that the use that Summitwood proposes to make of its property, which allegedly involves a substantial excavation, will directly affect their own property. The Scaringes' motion to intervene gave rise to much litigation, going all the way to our Supreme Court. See Summitwood Associates Phase IV v. Planning Commission,241 Conn. 918, 696 A.2d 343 (1997). On May 14, 1998, however, CT Page 8690 Summitwood ended this phase of the litigation by filing a written consent to the addition of the Scaringes as a party defendant.
On January 8, 1997, the Commission filed a motion to strike Summitwood's complaint. (No. 108.) The motion alleges both that, under the facts that Summitwood alleges, Buccelli was a valid member of the Commission for voting purposes and that mandamus is not the proper action to assert the claim that Summitwood is asserting here. On February 24, 1997, the Scaringes filed a motion to strike making identical claims to those made by the Commission. (No. 116.) On July 14, 1997, the Commission filed a second motion to strike alleging the nonjoinder of the ZEO, who, it says, is a necessary or indispensable party to the proceeding. (No. 136.) On May 1, 1998, Summitwood filed a motion for summary judgment. (No. 145.) This motion does not encompass the entire sweep of Summitwood's theories of the case but instead proceeds on a relatively limited ground. Summitwood argues here that, assuming that Buccelli was a valid member of the Commission, a three — member majority was necessary to deny its application in any event, and mandamus should issue as a matter of right. As mentioned, all of these motions were heard in a consolidated hearing on August 3, 1998. The issues raised in these various motions are obviously interrelated, and it will be helpful to analyze them in the order indicated in the first paragraph, although this procedure will involve some cross-cutting between the motions themselves.
 II. BUCCELLI'S STATUS
Summitwood's first contention is that Buccelli was not a member of the Commission entitled to vote. Since this is not a ground relied upon in Summitwood's motion for summary judgment (Summitwood implicitly concedes that this question involves a genuine issue as to material fact), the only question before me now is whether Summitwood's allegations survive a motion to strike. I conclude that they do so survive.
The complaint alleges that Summitwood filed a site plan application with the Commission to develop a 36 unit townhouse on property which Summitwood holds an option to purchase. The Commission received this application on December 14, 1994. Pursuant to Conn. Gen. Stat. § 8-7d(b), the Commission had sixty-five days to render a decision on the application. That period expired, according to Summitwood, on February 17, 1995. (The exact calculation of the time period in question is CT Page 8691 unimportant for present purposes.) Conn. Gen. Stat. § 8-3 (g) provides that, "Approval of a site plan shall be presumed unless a decision to deny or modify it is rendered within the period specified in section 8-7d."
As mentioned, the Commission met on February 17, 1995, and voted 2-1 to deny the application. Buccelli was one of the two persons who voted to deny it. Buccelli's status is a central contested issue in the case.
In order to determine Buccelli's status, it is necessary to refer to the appointments provision of the Meriden Charter. That provision is as follows:
 How appointments by City Council made. The Mayor shalL recommend any and all appointments to officers or positions within the appointing power of the City Council. . . The City Council may, within its next two (2) regular meetings after submission of a recommendation by the Mayor, reject said recommendation by majority vote of the entire membership . . . in failure of which said recommendation shall be deemed confirmed.
Meriden Charter § C3-3J.
The complaint alleges that Buccilli "had been nominated by the Mayor on February 7, 1995 to fill a vacancy on the Commission." It further claims that, "The next two meetings of the City Council after February 7, 1995, were on February 21, 1995 and March 6, 1995." Summitwood concludes from the Charter language just quoted that Buccelli was not "deemed confirmed" until March 6, 1995. The Commission's vote of February 17, 1995 at issue here, of course, occurred well in advance of this date.
The Commission responds to this assertion with alternative contentions of its own. It first argues that Buccelli immediately became a valid member of the Commission as a result of the Mayor's action of February 7, 1995. It alternatively claims that, even if Buccelli was not yet a valid member of the Commission of February 17, 1995, he was a de facto officer, and his vote was valid even if his technical membership was not. These contentions will be discussed in turn.
The Commission's first argument, that Buccelli immediately became a valid member of the Commission on February 7, 1995, can CT Page 8692 hardly be sustained, at least at this stage of the proceedings. It must be emphasized that the Commission is making its argument on the basis of the Charter provision alone, and that no evidence of any kind has been submitted on this issue. But the Charter provision in question is clear on this issue, and that clarity does not work in favor of the Commission. The Mayor "recommends" appointments to "positions within the appointing power of the City Council." It is the Council, not the Mayor, that has the "appointing power" itself. Until two regular meetings of the Council have occurred and no rejection of the recommendation has occurred at those meetings, the "appointing power" has not been exercised. And until that event occurs, assuming that it occurs at all, the "recommended" person has not been "appointed" and is not a valid member of the Commission.
The Commission has cited numerous cases from other jurisdictions holding that once the executive power has officially made its choice for an appointive position, the candidate so chosen is deemed to be immediately appointed, even prior to eventual confirmation by the legislative branch. See,eg., State ex rel. Brothers v. Zellar, 218 N.E.2d 729 (Ohio 1966). Those cases, however, involve constitutional provisions that expressly endow the executive with the appointing power in the first place. See, eg., id. at 732. In Meriden, it is not so. The appointive power here is in the legislative branch. In some respects, of course, the Meriden scheme is not unlike other constitutional or statutory schemes which require that an appointment be made by one individual or body of individuals subject to the approval of another individual or body of individuals. The difference here is that in Meriden, the approval (which is by the Mayor) precedes rather than succeeds the action of the appointing power (which is by the Council). See In reKane, 129 N.Y.S. 280, 288 (N.Y.App.Div.) (opinion of Burr, J.),aff'd, 96 N.E. 1117 (N.Y. 1911). Nevertheless, the underlying principle remains the same. Until the appointing power (in this case the Council) has acted, there is no appointment in the first place. For this reason, the Commission's first argument cannot succeed.
The Commission's alternative argument is that Buccelli, although not yet validly appointed, was a de facto officer on February 17, 1995. This contention is at least theoretically viable, but it will require evidence to support it and cannot be properly evaluated in the context of a motion to strike. The seminal, and still controlling, case on de facto officers in CT Page 8693 Connecticut is State v. Carroll, 38 Conn. 449 (1871). See Furtneyv. Simsbury Zoning Commission, 159 Conn. 585, 595-96,271 A.2d 319 (1970). Carroll itemizes four categories of de facto
officers:
 First, without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be.
 Second, under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent requirement or condition, as to take an oath, give a bond, or the like.
 Third, under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public.
 Fourth, under color of an election or appointment by or pursuant to a public unconstitutional law, before the same is adjudged to be such.
38 Conn. at 471-72.
The second, third, and fourth Carroll categories involve appointed officers with some defect in their appointments. Id.
Those categories are irrelevant to the present case, since, on February 17, 1995, Buccelli was not an appointed officer in the first place. The first Carroll category, in contrast, involves officers who have not been appointed in the first place. That category is the brass ring that the Commission must grasp in this case if it is to establish its de facto officer theory at all.
Carroll, as just described, states that a person falls within the first category of de facto officers if he or she is "without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be." 38 Conn. at 471. Was Buccelli an officer of this description on February 17, 1995? The answer to this question depends entirely on the evidence. At this point, the court has little or no evidence before it concerning CT Page 8694 the "circumstances of reputation or acquiescence" existing at the time in question. Since this question comes before the court in the context of a motion to strike, the court must read the allegations of the complaint in the light most favorable to the plaintiff. When the complaint here is so read, it fairly appears that Buccelli was not an appointed officer at the time of the vote in question The Commission's assertion that he was a defacto officer cannot be established without evidence. Under these circumstances, the plaintiff's first theory of the case survives a motion to strike.
 III. THE COMMISSION'S VOTING RULES
Summitwood additionally argues that even if Buccelli was a valid member of the Commission or a de facto officer on February 17, 1995, the Commission's 2-1 vote on that date to deny the application was still invalid because three votes were necessary to deny the application in any event. This issue, which is an issue of law, turns on a proper construction of the relevant provisions of the Meriden Code.
Meriden Code § 6-20 establishes "a Planning Commission which shall consist of five (5) members." Sec. 6-24 then provides that, "a majority of the members of the Planning Commission must be present to constitute a quorum, and a majority vote of the total membership of the Commission is required for action."
Assuming, for purposes of argument, that Buccelli was either a valid member of the Commission or a de facto officer, the quorum requirement of § 6-24 was plainly satisfied. The problem lies in that section's additional provision that "a majority vote of the total membership of the Commission is required for action." The "total membership of the Commission" is five, and "a majority vote" of that number is plainly three. I do not understand the Commission as contesting this analysis. The Commission, instead, focuses on the word "action." In its view, "The word `action' indicates a change in the status quo." Brief of Commission in opposition to plaintiff's motion for summary judgment at 19. The Commission further argues that, "The requirement to obtain the majority of the entire membership of the Commission to approve a site plan application, i.e. take `action' to change the status quo, does not apply to a denial of an application in which the status quo is maintained after the applicant fails to obtain the necessary votes for approval." Id.
CT Page 8695
The Commission's narrow view of the word "action" cannot be sustained. An "action," according to Webster, is "an act or decision by an executive or legislative body." Webster's ThirdNew International Dictionary, 21 (1971). It is immaterial whether the decision in question is one to approve or deny, to change the status quo or to leave it in place. The business of the legislative branch is the making of decisions. All such legislative decisions are "actions." The question is whether the legislative body has made a decision, not the content of that decision. The denial of a zoning application is an "action," just as would be the granting of such an application. Board ofSupervisors v. Lerner, 267 S.E.2d 100, 102 (Va. 1980).
It is, for the reasons just explained, clear as a matter of law that the voting requirements of Meriden Code § 6-24 were not met by the Commission's 2-1 vote on February 17, 1995. Given this conclusion, the effect, if any, of this vote must be considered. Our Supreme Court has held that, "[T]he failure of an application to garner enough votes for its approval amounts to a rejection of the application." Merlo v. Planning ZoningCommission, 196 Conn. 676, 683, 495 A.2d 268 (1985). Merlo and the authorities it cites, however, do not consider the effect of specific municipal rules requiring stated voting majorities for denials as well as approvals. Merlo itself involved an express disapproval by a 5-4 vote. 196 Conn. at 679. Each of the authorities that it cites — Lupinacci v. Planning ZoningCommission, 153 Conn. 694, 696, 220 A.2d 274 (1966), and Hall v.Planning Zoning Board, 153 Conn. 574, 576, 219 A.2d 445
(1966) — involved tie votes. Both of those latter decisions were made in the context of the general rule of common law and parliamentary law that "an affirmative resolution or action which is the subject of a tie vote fails of adoption." 59 Am.Jur.2dParliamentary Law § 14 (1987). Meriden, however, has chosen to enact an exception to the common law rule governing the actions of its Planning Commission. It is plainly entitled to do so. Under these circumstances, the 2-1 vote to deny the application did not amount to a rejection of the application.
 IV. THE APPROPRIATE FORM OF ACTION
Summitwood has brought the action now before the court as a mandamus action. The Commission contends that mandamus is not the appropriate form of action in which to seek the relief that Summitwood is seeking here. The Commission argues that Summitwood is, in essence, contesting Buccelli's title to his office and CT Page 8696 that it must do so, if at all, in a quo warranto action. This contention is unpersuasive.
Summitwood originally attempted to assert the claims it is now making in an administrative appeal to this court pursuant to Conn. Gen. Stat. § 8-8 (b). On June 10, 1996, the court (Booth, J.) dismissed Summitwood's appeal, holding that an action for mandamus, rather than an administrative appeal, was the correct procedural vehicle to seek the relief that Summitwood is seeking. Summitwood Associates Phase IV v. Planning Commission, No. 371972 (N.H.J.D.) (June 10, 1996). Summitwood has now done exactly what the court informed it that it must do. It plainly should not be penalized for following the express advice of the court.
Beyond this consideration, it is clear that this is not a quo warranto action in any event. "A successful quo warranto action unseats an illegal office holder and declares the position vacant." New Haven Firebird Society v. Board of FireCommissioners, 219 Conn. 432, 436, 593 A.2d 1383 (1991). By statute, the goal of a quo warranto action is to "punish" a person usurping the exercise of an office. Conn. Gen. Stat. §52-491. If Buccelli is still on the Commission, the temporal problems that led to his questionable status on February 17, 1995, have long since ceased to exist. Summitwood neither seeks to unseat him from office now nor to punish him in any way. It instead seeks a court order that the Commission issue a notice of approval of the application. "Quo warranto is addressed to preventing a continued exercise of authority unlawfully asserted, not to a correction of what already has been done under it."Johnson v. Manhattan Railway Co., 289 U.S. 472, 502 (1933). Under these circumstances, the Commission cannot prevail in their contention that this action must be brought as a quo warranto action.
 V. NONJOINDER OF THE ZEO
The Commission's second motion to strike contends that the ZEO is both a necessary and indispensable party to the action. The Commission argues that if Summitwood is granted the relief it seeks — an order that the Commission issue a notice of approval of the application — the ZEO will be legally obligated to sign a zoning permit. Although this might be the case, the issuance of a zoning permit forms no part of Summitwood's prayer for relief. Beyond this, however, the ZEO, in his official capacity, can have CT Page 8697 no interest in the outcome of this case. His only obligation, as a public official, is to do what the law requires. Lower public officials are often required to conform their official actions to judicial decisions, but they are not considered to be necessary or indispensable parties to actions that affect them in only that capacity. Necessary and indispensable parties are considered to be such only if they have an interest in the outcome of the case.Napoletano v. CIGNA Healthcare of Connecticut, Inc.,238 Conn. 216, 225-26 n. 10, 680 A.2d 127 (1996), cert. denied,117 S.Ct. 1106 (1997). See Salem Trust Co. v. Manufacturers' Finance Co.,264 U.S. 182, 190 (1924). Because the ZEO lacks such an interest, and because his participation is unnecessary to grant the relief actually requested in the case, the Commission's argument that he is a necessary or indispensable party is unpersuasive.
 VI. THE NECESSITY OF HEARING EVIDENCE
Summitwood argues that because the Commission's 2-1 vote to deny the application was, for reasons already discussed, ineffective, that mandamus should issue forthwith. The Commission and the Scaringes have responded with affidavits and arguments, that if the application is ordered approved, the resultant excavation and development will violate Meriden zoning regulations and create a common law nuisance. The question arises whether, under these circumstances, mandamus should issue as a matter of right.
There is a tension, here as elsewhere in the legal arena, between the commands of the positive law and the discretion inherent in equity. On the one hand, the time frame of Conn. Gen. Stat. § 8-7d(b) is mandatory, and if a decision to deny or modify a site plan application is not made within that time frame, Conn. Gen. Stat. § 8-3 (g) expressly provides that approval of the application shall be presumed. SSM AssociatesLimited Partnership v. Plan Zoning Commission, 211 Conn. 331,335, 559 A.2d 196 (1989). A failure by the Commission to act effectively within the time parameters arguably results in the approval of the application by operation of law. See Caldrello v.Planning Board, 193 Conn. 387, 392, 476 A.2d 1063 (1984). On the other hand, Summitwood has chosen to bring this action before the court in the form of an action for mandamus."Mandamus is an ancient common law writ, but its issuance is governed largely by equitable considerations." State ex rel. Shelton v. Edwards,109 Conn. 249, 254-55, 146 A. 382 (1929). It is well established that CT Page 8698 issuance of the writ of mandamus "is in large part a matter of discretion with the court to which the petition is addressed."Kerr v. United States District Court, 426 U.S. 394, 403 (1976).
"[M]andamus will issue only if the plaintiff can establish: (1) that the plaintiff has a clear legal right to the performance of a duty by the defendant; (2) that the defendant has no discretion with respect to performance of that duty; and (3) that the plaintiff has no adequate remedy at law." Vartuli v. Sotire,192 Conn. 353, 365, 472 A.2d 336 (1984). "Even satisfaction of this demanding test does not, however, automatically compel issuance of the requested writ of mandamus. . . In deciding the propriety of a writ of mandamus, the trial court exercises discretion rooted in the principles of equity." Hennesy v. Cityof Bridgeport, 213 Conn. 656, 659, 569 A.2d 1122 (1990). Consequently, a writ of mandamus "may be refused for reasons comparable to those which would lead a court of equity, in the exercise of a sound discretion, to withhold its protection of an undoubted legal night." United States ex rel. Greathouse v. Dern,289 U.S. 352, 359 (1933). As Brandeis, J. explained long ago, mandamus "issues to remedy a wrong, not to promote one; to compel the performance of a duty which ought to be performed, not to direct an act which will work a public or private mischief or will be within the strict letter of the law but in disregard of its spirit." Duncan Townsite Co. v. Lane, 245 U.S. 308, 311-12
(1917). These principles govern all mandamus actions, even those involving presumed approvals of site plans. See Par Developers,Ltd. v. Planning Zoning Commission, 37 Conn. App. 348, 353-54,655 A.2d 1164 (1995).
For these reasons, mandamus is not a writ issued as a matter of right. Before granting the writ, the court must consider "the public interests which may be implicated." Evans v. Villani,88 A.2d 1, 4 (N.J Super. Ct. App. Div. 1952). It should "act in view of all of the facts and circumstances," id., "and with due regard to the consequences," State ex rel. Cranfill v. Smith,48 S.W.2d 891, 893 (Mo. 1932). In exercising its discretion whether to issue the writ sought here, the court should hear evidence concerning the consequences of the proposed order. For this reason, Summitwood's motion for summary judgment must be denied.
 VII. THE EFFECT OF THE ADMINISTRATIVE APPEAL
The final issue before the court is the preclusive effect, if any, of the decision of Booth, J., discussed supra, to dismiss CT Page 8699 Summitwood's administrative appeal. The Commission argues that the earlier decision establishes that the writ of mandamus requested in this case would result in an array of zoning violations. With respect, I do not read that decision in terms quite so sweeping. First, as already mentioned, Booth, J. held that Summitwood would have to pursue a mandamus action to obtain the relief it was requesting. That holding would have been both contradictory and futile if relief in the subsequent mandamus action, duly filed, were already foreclosed as a result of the very decision that instructed the plaintiff to file it. Second, Booth, J. found that the Commission, in rejecting the application, acted within its discretion and that the Commission could reasonably conclude that certain zoning violations would occur. The court expressly declined to substitute its judgment for that of the Commission. See slip op. at 38.
The issue in the administrative appeal was whether the Commission abused its discretion. This is emphatically not the issue in the mandamus action now before the court. The court here, as in all mandamus actions, will be required to make its decision whether to issue the writ based on the evidence presented in the case. Under these circumstances, the decision in the prior administrative appeal is without preclusive effect.
 VII. CONCLUSION
For the reasons set forth above, Summitwood's complaint survives the motions to strike, but there are genuine issues of material fact that preclude the granting of its motion for summary judgment. The motions to strike and the motion for summary judgment are denied.
Jon C. Blue
Judge of the Superior Court